```
                                  UNITED STATES DISTRICT COURT
                                  SOUTHERN DISTRICT OF FLORIDA

                                  CASE NO. 09-23098-Civ-LENARD
                                          (06-20001-Cr-LENARD)
                                  MAGISTRATE JUDGE P. A. WHITE
JALAL SAADAT MOHEISEN,      :

     Movant,                :          REPORT OF
                                       MAGISTRATE JUDGE
v.                          :

UNITED STATES OF AMERICA,   :

     Respondent.            :
_____
```

### 1. Introduction

This matter is before the Court on the movant's motion to vacate pursuant to Title 28, United States Code section 2255, attacking his sentence for conspiracy to provide material support to a foreign terrorist organization following a guilty plea in criminal case number 06-20001.

The Court has reviewed the motion to vacate, supporting memorandum and affidavit, government's response and appendix of exhibits, Moheisen's reply, the Presentence Investigation Report ("PSI"), and all pertinent portions of the underlying criminal file.

### 2. Claims

Construing the *pro se* movant's arguments liberally, Haines v. Kerner, 404 U.S. 419 (1972), he appears to raise the following claims in his section 2255 motion:

Counsel was ineffective for:
1. failing to object when the government breached the plea agreement by seeking enhancement due to

1

>           Moheisen's leadership role; and
> 2.      failing to request the time period Moheisen spent
>         in Combita jail in Colombia be computed double due
>         to aberrant conditions.

(Civ-DE# 1).

In his supporting memorandum and affidavit, he also appears to allege counsel was ineffective for:

> 3.      abandoning his adversarial role and breaching
>         loyalty at the sentencing hearing by conceding
>         Moheisen was a middleman and proposing a sentence
>         enhancement on that basis;
> 4.      failing to withdraw from Moheisen's representation
>         on appeal and refusing to file a supplemental brief
>         raising appellate issues Moheisen identified;
> 5.      failing to be in contact with Moheisen before the
>         plea and sentencing hearings; and
> 6.      stipulating to the government's use of a transcript
>         and tape recording at the sentencing hearing
>         without knowing their contents.

(Civ-DE# 2-3).

## 7. Procedural History

The relevant procedural history of the underlying criminal case is as follows. On February 7, 2006, Moheisen was charged by superseding indictment with: Count (1), conspiracy to provide material support to a foreign terrorist organization (18 U.S.C. § 2339B(a)(1)); Counts (3)-(5), attempting to provide material support to a designated foreign terrorist organization (18 U.S.C. § 2339B(a)(1), 18 U.S.C. § 2(a)); Count (7), conspiracy to commit alien smuggling (18 U.S.C. § 371, 8 U.S.C. §§ 1324(a)(2)(B)(ii),

(a)(1)(A)(iv), (a)(1)(B)(i)); Counts (10)-(12), alien smuggling by bringing aliens to the United States for profit (8 U.S.C. § 1324(a)(2)(B)(ii), 18 U.S.C. § 2(a)); and Counts (13)-(15), alien smuggling by encouraging and inducing aliens to come to the United States (8 U.S.C. § 1324(a)(1)(A)(iv), 18 U.S.C. § 2(a)). (Cr-DE# 15).

Moheisen signed a written plea agreement on November 13, 2007, in which he pled guilty to Count (1) in exchange for the government's agreement to dismiss the remaining charges. (Cr-DE# 223). He acknowledged he faced a sentence up to a statutory maximum of 15 years followed by up to 5 years of supervised release, a fine of $250,000, and special assessment of $100. (Cr-DE# 223 at ¶¶ 4-5). The government reserved the right to inform the Court and probation office of "all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background." (Cr-DE# 223 at ¶ 6). The government reserved the right to make any recommendation as to the quality and quantity of punishment. (Cr-DE# 223 at ¶ 6). The government agreed to recommend the Court reduce the sentencing guideline level by up to three levels for cooperation and impose a sentence at the low end of the guideline range. (Cr-DE# 223 at ¶ 7). It agreed not to recommend an upward departure from the guidelines based on the nature of the offense, defendant's relevant offense conduct or background. (Cr-DE# 223 at ¶ 8). Moheisen waived all Section 3742 rights to appeal any sentence imposed unless it exceeded the maximum permitted by statute or resulted from an upward departure and/or variance from the guideline range. (Cr-DE# 223 at ¶ 12). The government agreed Moheisen would be given credit toward the time he served in

Colombian detention after his arrest on January 26, 2006, and continuing through the date sentence is imposed. (Cr-DE# 223 at ¶ 20). The parties conceded the written plea represented their entire agreement and understanding. (Cr-DE# 223 at ¶ 21).

At a plea hearing the same day, Moheisen acknowledged he understood his right to proceed to trial and was voluntarily pleading guilty. The government proffered a factual basis for the plea which Moheisen admitted was true. (Civ-DE# 9-4 at T. 52-68). He pled guilty because he was guilty. (Civ-DE# 9-4 at T. 69). He confirmed he understood he had not been guaranteed any specific sentence:

> THE COURT: Do you understand the sentencing guidelines promulgated by the United States Sentencing Commission will advise the Court in this matter?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.
> THE COURT: Have you and your attorney talked about how the sentencing guidelines might apply to your case?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.
> THE COURT: Do you understand that the Court will not be able to determine the advisory guideline range for your sentence until after the advisory presentence investigation report has been completed and you and the Government have had the opportunity to challenge the reported facts and the application of the guidelines as recommended by the probation officer?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.
> THE COURT: Do you understand that the Court will consider all the sentencing factors provided by law, including the sentencing guidelines?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.

> THE COURT: Do you understand that, after considering all of these factors, the Court will impose an appropriate sentence up to the statutory maximum?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.
> THE COURT: Do you understand that the sentence imposed may be different from any estimate your attorney has given you?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.

(Civ-DE# 9-4 at T. 70-72).

Moheisen confirmed his plea was voluntary and was not coerced by any threats or promises:

> THE COURT: Is you plea of guilty being made freely and voluntarily?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.
> THE COURT: Has anyone forced or threatened you or coerced you to plead guilty?
> DEFENDANT SAADAT MOHEISEN: No, your Honor.
> THE COURT: Other than the representations made to you in the plea agreement, ... has anyone made any other representations to you to convince you to plead guilty?
> DEFENDANT SAADAT MOHEISEN: No, your Honor.
> THE COURT: Are you satisfied with your attorney?
> DEFENDANT SAADAT MOHEISEN: Yes, your Honor.

(Civ-DE# 9-4 at T. 72-73).

The Court reviewed the terms of the written plea agreement with Moheisen. He confirmed he fully understood the agreement and voluntarily entered into it. (Civ-DE# 9-4 at T. 73-86).

The PSI calculated the base offense level at 26 with a three-

level reduction for cooperation. (PSI at ¶¶ 80, 87-88). Four levels were added for Moheisen's role in the offense. U.S.S.G. § 3B1.1(a); (PSI at ¶ 83). Counsel filed objections arguing no increase should be applied for Moheisen's role:

> [T]he defendant maintains that he was not the leader of the organization.... The PSI fails to state with particularity how it was that the defendant was characterized as the leader of the organization when it clearly states that [two co-defendants] were involved prior to his involvement. The defendant did not control any of the other codefendants, nor did he call the shots as to who was required to do what. The defendant was a middle-man, and accordingly, his offense level should not be enhanced.

(Cr-DE# 279).

The sentencing hearing was held on February 25, 2008. Special agent Robert Jimenez personally participated in the investigation and testified regarding the structure of the conspiracy. (Civ-DE# 9-5 at T. 8). He explained Moheisen did the planning for the initial attempt to smuggle aliens at the airport with forged Spanish passports. (Civ-DE# 9-5 at T. 15-17). When that attempt failed, Moheisen offered another avenue using a different subcontractor to try getting them through the airport. (Civ-DE# 9-5 at T. 17-18). Undercover sources told Moheisen they were FARC members and planned to go to United States to launder FARC drug money back to Colombia. Moheisen offered to help them by connecting them with a jewelry dealer who could move $4-5 million a month. (Civ-DE# 9-5 at T. 31-32). Moheisen personally received payment for forged passports. (Civ-DE# 9-5 at T. 54).

Jimenez testified hundreds of meetings were video-recorded during many months with the help of informants, resulting in hundreds of audio tracks on a hard drive. (Civ-DE# 9-5 at T. 18). Jimenez explained there was no reason to believe recordings provided in discovery were tampered with in any way. (Civ-DE# 9-5 at T. 21). The government played two short video clips from discovery played for court without objection by any defense counsel. (Civ-DE# 9-5 at T. 21-22). The tapes were in Spanish, so the government provided transcripts of the two clips being played. (Civ-DE# 9-5 at T. 22). Counsel objected on redirect to the government's tapes on authenticity grounds because Moheisen did not believe he had participated in the conversations and it was not his voice that the tapes depicted. After a recess during which Moheisen was able to view the evidence, he admitted he had participated in the taped conversations and the relevant transcripts were admitted without further objection. (Civ-DE# 9-5 at T. 65).

Counsel objected to application of the four-level enhancement, arguing the government had not carried its burden of showing Moheisen was a leader of a criminal activity involving five or more participants or was otherwise extensive, involved procurement of Spanish passports and stamps to allow members of FARC to travel to the United States, had decision-making authority, recruited accomplices, claimed right to a larger share of fruits of crime, supervised the people they recruited, or sought to insulate himself by having others do various tasks. (Civ-DE# 9-5 at T. 87-88). The Court found the aggravating role increase of four levels was warranted under 3B1.1, and adopted the revised PSI. (Civ-DE# 9-5 at T. 89-90).

Moheisen's counsel declined to move for a downward departure based on conditions in Colombia. Co-defendant Carmen Maria Ponton

Caro moved for a downward departure under 5K2.0 because she had spent more than a year in jail in Colombia where the conditions were worse than in the United States. (Civ-DE# 9-5 at T. 92). The government objected because there was no evidence the jail conditions in Colombia were any worse than the United States. (Civ-DE# 9-5 at T. 93). The court denied Ponton Caro's motion for downward departure. (Civ-DE# 9-5 at T. 93). Moheisen's counsel therefore declined to seek a similar downward departure because it would have been futile. (Civ-DE# 9-5 at T. 103) ("I know the Court is not going to entertain any motions to reduce – or for a downward departure based on the arguments already made by my co-counsel.").

Moheisen addressed the court and asked for forgiveness. (Civ-DE# 9-5 at T. 105).

The Court found a guidelines sentence was appropriate for punishment and deterrence. (Civ-DE# 9-5 at T. 106).

On April 24, 2008, Moheisen sent letters to counsel requesting that he withdraw, and filed a pro se "Notice of Defendant's Request to his council, etc.," in which he sought new counsel due to "irreconcilable differences" and his dissatisfaction with counsel's representation at the sentencing hearing. (Cr-DE# 382); (Civ-DE# 2, Ex. B-4). At a hearing, Moheisen consulted with counsel then stated under oath that he wished to continue to be represented by Mr. Vereen. (Civ-DE# 9-9, 9-10). The court accordingly denied the motion.

In June, 2008, counsel filed an appellate brief in which he argued the Court erred in enhancing Moheisen's total offense level by four levels for his role in the offense where government failed to prove by a preponderance of the evidence that he: exercised

decision-making authority over the other conspiracy participants, claimed a larger share of the fruits of the crime, played an integral role in the success of the scheme, or recruited anyone to join the conspiracy and that Moheisen was only a middle-man. (Civ-DE# 9-6). Moheisen sent counsel a letter on July 29, 2008, requesting he file an addendum arguing the leadership enhancement violated the Sixth Amendment and breached the plea agreement. (Civ-DE# 2, Ex. C). On August 6, 2008, counsel sent a letter to Moheisen agreeing to file a supplemental brief. (Civ-DE# 2, Ex. D). The Eleventh Circuit dismissed the appeal on September 23, 2008, because Moheisen's plea agreement contained a valid appeal waiver. (Civ-DE# 9-8).

Moheisen filed the instant motion to vacate on October 5, 2009.

### 8. Statute of Limitations

The government does not contest the timeliness of Moheisen's motion to vacate or argue any other procedural impediments apply.

### 9. Standard of Review

Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a); see Hill v. United States, 368 U.S. 424, 426-27 (1962). A sentence is otherwise subject to collateral attack if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill, 368 U.S. at

428.

A defendant who pleads guilty "waives all non-jurisdictional challenges to the constitutionality of the conviction" and may only attack the knowing and voluntary nature of the plea. See Wilson v. United States, 962 F.2d 996 (11th Cir. 1992). The defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity" and cannot be overcome by conclusory or unsupported allegations. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

To prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000). In the context of sentencing, a defendant is required to prove that, if counsel had not performed deficiently, the result of his sentencing proceeding would have been different. Glover v. United States, 531 U.S. 198, 203-204 (2001); Forrester v. United States, 349 Fed. Appx. 528 (11th Cir. 2009).

### 10. Discussion
(1) <u>Breach of the Plea Agreement</u>

Moheisen argues counsel failed to object when the government sought enhancement based on Moheisen's aggravated role in breach of the plea agreement.

Under the guidelines, "specific offense characteristics and

enhancements differ from upward or downward departures." United States v. Hutchins, 179 Fed. Appx. 594, 600 (11th Cir. 2006). Enhancements are circumstances the court considers when calculating the guidelines range. See Hutchins, 179 Fed. Appx. at 600; U.S.S.G. § 1B1.3(a) (explaining how to calculate appropriate guideline range). On the other hand, departures are sentences that differ from the guidelines range after the range has been calculated. See U.S.S.G. § 1B1.1, comment n.1(E).

Here, the government agreed not to recommend an *upward departure* from the guidelines based on the nature of the offense, defendant's relevant offense conduct or background. (Cr-DE# 223 at ¶ 8). The government requested an *enhancement* for Moheisen's aggravating role under section 3B1.1. This request for an enhancement was part of the guidelines calculation, not a request for a departure from the guidelines, and therefore did not breach the plea agreement. Hutchins, 179 Fed. Appx. at 600 (guidelines calculation that included enhancements and offense characteristics but no departures complied with the terms of the plea agreement). As no breach occurred, counsel cannot be deemed ineffective for failing to object.

(2) Double Credit for Colombian Incarceration

Moheisen argues counsel was ineffective for failing to request double credit for the time he spent in Colombian jail due to aberrant conditions there.

No ineffective assistance is apparent. Mohseisen's plea agreement specifies he will receive credit for the time he served in Colombian custody; no provision for double credit appears. Counsel for co-defendant Ponton Caro had just requested double credit for time she had served in Colombian prison in the same plea

11

hearing as Moheisen. The government opposed double credit and the Court denied the request. Moheisen's counsel appears to have contemplated making such a request but declined to do so because the Court had just rejected Ponton Caro's request on the same grounds. See (Civ-DE# 9-5 at T. 103) ("I know the Court is not going to entertain any motions to reduce - or for a downward departure based on the arguments already made by my co-counsel."). The decision not to pursue an issue that counsel perceived as futile is a reasonable strategy and not deficient performance. See Bush v. Strickland, 988 F.2d 1082, 1092 (11th Cir. 1993) ("Strickland does not compel an attorney to urge an argument which he reasonably finds to be futile....").

Moreover, there is no reasonable probability of a different outcome had counsel raised the issue in light of the Court's rejection of co-defendant's request on the same grounds moments earlier. Moheisen's suggestion that counsel's failure to raise the issue waived it for appeal is likewise meritless. Moheisen waived his appeal of the sentence in his plea agreement. Therefore, even if counsel had raised the issue at trial, he would not have been able to raise the issue on appeal.

(3) Breach of Loyalty

Moheisen argues counsel was ineffective for abandoning his adversarial role and breaching loyalty at the sentencing hearing by conceding Moheisen was a middleman and proposing a sentence enhancement on that basis.

Any suggestion that counsel failed to advocate for Moheisen regarding the aggravated role enhancement is unfounded. Counsel objected to the PSI's addition of four levels for aggravated role and argued at the sentencing hearing that the evidence was

insufficient to support a four-point enhancement. Further, Moheisen's suggestion that counsel breached the duty of loyalty by suggesting a two-point enhancement because Moheisen was a "middleman" is unfounded. The government's factual proffer, which Moheisen admitted was true as part of his guilty plea, implicated him in the heart of the conspiracy. The government presented evidence at the sentencing hearing that highlighted Moheisen's role as an organizer and decision-maker in the conspiracy. Counsel could have reasonably concluded based on this evidence that the Court would have rejected an argument seeking no role enhancement for Moheisen. Counsel reasonably argued a two-level enhancement should apply rather than the full four-level enhancement that the government sought. Counsel cannot be deemed ineffective for pursuing this reasonable strategic decision.

Moheisen is unable to demonstrate prejudice. At the same time the Court applied the four-level enhancement to Moheisen, it also applied the same enhancement to Ponton Caro, Moheisen's co-defendant and wife who he had brought into the conspiracy and who appeared to have a lesser role than Moheisen. Even if counsel had sought no role enhancement for Moheisen there is no reasonable probability that argument would have led to a different outcome.

(4)  <u>Direct Appeal</u>

Moheisen argues counsel provided ineffective assistance on direct appeal by failing to withdraw from Moheisen's representation and refusing to file a supplemental brief raising appellate issues Moheisen identified.

The allegation that counsel refused to withdraw is refuted by the record. Moheisen moved for counsel's withdrawal and replacement before counsel filed the appellate brief. Moheisen waived his

13

motion and decided to keep counsel at a hearing on the motion to withdraw. There is no indication in the record, and Moheisen does not allege, that he asked counsel to withdraw after the hearing occurred. Indeed, the record indicates Moheisen went on to correspond with counsel in a cooperative effort to present the desired issues on appeal. See (Civ-DE# 2, Ex. C, D).

The allegation that counsel was ineffective for failing to file a supplemental appellate brief raising additional grounds lacks merit. Counsel sent a letter to Moheisen agreeing to file a supplemental brief on August 6, 2008. (Civ-DE# 2, Ex. D). The Eleventh Circuit dismissed the appeal on September 23, 2008, because Moheisen's plea agreement contained a valid appeal waiver. (Civ-DE# 9-8). Counsel's failure to raise additional grounds attacking Moheisen's sentence could not have prejudiced Moheisen due to his valid waiver of sentencing issues and the Eleventh Circuit's dismissal of the appeal.

(5)   Failure to Contact

Moheisen contends counsel was ineffective for failing to be in contact with him before the plea and sentencing hearings.

To the extent Moheisen alleges counsel failed to contact him prior to the plea hearing, his guilty plea waived any deficiency. See generally Smith v. United States, 447 F.2d 487 (5th Cir. 1971) (a valid plea of guilty constitutes a waiver of all non-jurisdictional defects and defenses).

To the extent Moheisen alleges counsel failed to contact him after the plea hearing, such claims are unsupported by any factual details and therefore are too vague to support relief. See, e.g., United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980) (conclusory

14

allegation unsupported by any specific facts insufficient to state a constitutional claim). He has not demonstrated any failure by counsel prejudiced him.

(6) <u>Stipulation</u>

Moheisen argues counsel was ineffective for stipulating to the government's use of a transcript and tape recording at the sentencing hearing without knowing their contents.

Counsel was not deficient because no basis for objecting to the tape or transcript exists. The sentencing hearing transcript indicates the taped materials had been produced to the defense during discovery. The government established the tapes' authenticity through an agent who personally participated in the investigation, and provided transcripts of the English translations of the Spanish tapes. Fed. R. Ev. 901 (general requirements for authentication). Counsel objected only to the extent Moheisen claimed the tapes might not contain his voice. However, the objection was withdrawn following a recess in which Moheisen had the opportunity to confirm the tapes portrayed him.

Moheisen has failed to demonstrate how counsel's stipulation prejudiced him. He does not contend the tapes or translations were inaccurate or otherwise inadmissible. <u>See</u> <u>Schwab v. Crosby</u>, 451 F.3d 1308 (11th Cir. 2006) (no prejudice for failing to cross-examine witnesses on chain of custody where defendant had not suggested any evidentiary basis for attacking chain of custody or credibility of the five witnesses who testified to it). Further, he admitted the factual basis for the plea including the acts portrayed in the tapes. He has failed to explain how the sentence he received would have been different had counsel not stipulated to the tapes' and transcript's admission.

Based on the foregoing, it is recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 4th day of August, 2010.

UNITED STATES MAGISTRATE JUDGE

cc: Jalal Saadat Moheisen, pro se
Reg. #78416-004
Low Security Correctional Institution - Allenwood
Inmate Mail/Parcels
PO Box 1000
White Deer, PA 17887

Brian D. Skaret
U.S. Department of Justice
Criminal Division Domestic Security Sect
950 Pennsylvania Ave, NW
Suite 7645
Washington, DC 20530

Anne Ruth Schultz
United States Attorney's Office
99 NE 4 St.
Miami, FL 33132

William Carter White
United States Attorney's Office
99 NE 4 St.
Miami, FL 33132